GLADNEY, Judge.
In this damage suit personal injuries were sustained by Mrs. Jane Hamner Smith and her minor daughter, Catherine, in a vehicular collision occurring in the intersection of Thornhill and Evangeline Streets in Shreveport, Louisiana. The claimants are Mrs. Smith, petitioning on account of her injuries, and her husband, Robert Mc-Nair Smith, who seeks reimbursement of community expenses incurred, and who also appears to recover damages for personal injuries to the minor, Catherine Smith. Made defendants are Mary Ruth Hoye and her liability insurer, the St. Paul Fire and Marine Insurance Company. After a trial a jury verdict awarded Robert McNair Smith $1,160 for property damage and medical expenses, and $40 for his daughter, Catherine. The demands of Mrs. Smith were denied. From the resulting decree all parties have appealed.
The principal issue presented on the appeal pertains to the negligence of both drivers, and particularly as to whether either was maintaining a proper lookout upon entering the intersection. The soundness of the awards as made, is seriously argued.
During the afternoon of April 15, 1958, a dry, clear day, Mrs. Jane Hamner Smith, accompanied by her daughter Catherine, fifteen years of age, was driving west on Evangeline Street approaching Thorn-hill at about the same time Mary Ruth Hoye was driving north along Thornhill nearing its intersection with Evangeline. Neither of the two vehicles was proceeding at a speed in excess of fifteen to twenty miles per hour. A collision between the two automobiles occurred about the center of the intersection, the Smith car being *653 struck near the middle of its left side by the right front of the other vehicle.
The intersection is one not controlled by a signal light and is without stop signs; nor is it affected by a city traffic ordinance. It is, therefore, governed by the State Highway Regulatory Act, LSA-R.S. 32:237, subd. A, which accords the right-of-way to the vehicle approaching the intersection 'from the right.
Evangeline and Thornhill Streets are each surfaced to a width of twenty-four feet. Evangeline is a level, paved street, whereas Thornhill is blacktopped and bumpy. A board fence approximately three feet high or more, edges the two streets at the southeast corner of the intersection. The boards of the fence are six inches to eight inches wide, are affixed horizontally and spaced about eight inches .apart. Photographs of the southeast corner of the intersection disclose several bushes and trees growing in this corner between Thornhill and Evangeline Streets. To further obstruct the vision of a motorist approaching the intersection from the south on Thornhill, at the time of the accident an automobile was parked close to the southeast corner of the intersection on the south side of Evangeline Street.
A Shreveport police officer, K. J. DeLy-■ser, who investigated the accident immediately after its occurrence, positioned the point of impact between the two vehicles •close to the center of the intersection, with the Smith car being somewhat more advanced therein than the vehicle of Miss Hoye.
There were no eye witnesses to the accident, other than the occupants of the two cars. These were Mrs. Smith and her minor daughter, Catherine, and Miss Hoye, who was accompanied by a child of ten years of age, Judy Outz, who did not testify. Mrs. Smith testified that she did not reduce her speed and she first saw the Hoye vehicle when she was entering the intersection. Miss Hoye testified she considerably reduced the speed of her automobile as she came to the intersection and then proceeded forward, but did not notice the approach of the Smith car until it entered the intersection. The foregoing facts are not disputed and clearly show neither motorist observed the approach of the other until it was impossible for either to alter or stop the course of her vehicle and avoid the collision. Immediately following the impact Miss Hoye admitted fault to Mrs. Smith, which statements she acknowledged on the witness stand, but then testified that after reconsidering the matter she did not feel she was more at fault than was Mrs. Smith. Damage to the Hoye car was negligible, but the Smith vehicle was damaged, incurring a bill of $218.37 for restoration to its previous condition.
Counsel for the defendants do not seriously assert Miss Hoye was free from negligence, but they strongly maintain that Mrs. Smith was contributorily negligent in failing to maintain a proper lookout and in not yielding to Miss Hoye, who, it is averred, had pre-empted the intersection. The position so taken is not a sound one. Mrs. Smith’s observation of traffic approaching from her left on Thornhill was obscured by the parked automobile, the board fence and shrubbery, all of which, we think, prevented her from seeing across the southeast corner of the intersection. The corner is one we commonly refer to as a “blind corner” and for this reason the Hoye vehicle could not be seen until it actually nosed into the intersection.
We find Mrs. Smith did not fail in her duty to maintain a proper lookout, a duty which implies that one who operates a motor vehicle must keep a sharp lookout ahead to discover the presence of those who might be in danger. When the foregoing circumstances prevail a duty resolves upon the motorist approaching from the left to yield. The implication from the statute LSA-R.S. 32:237, subd. A, is *654 that a motorist exercising ordinary care in driving on a superior street should not be held to the same standard or degree of care and vigilance as if no such expression of the legislative intent existed. He has the right to assume, it has been repeatedly held, that unless danger can be reasonably anticipated or is otherwise imminent, the law relating to this rule of the road is understood and will be observed, and he is not required to search in anticipation of other motorists who may, in violation thereof, enter an intersection from an inferior street without being relatively certain that it is safe. to do so. Gutierrez v. Columbia Casualty Company, La.App.1958, 100 So.2d 537, 539. In Gautreaux v. Southern Farm Bureau Casualty Company, La.App.1955, 83 So.2d 667, 669, it was said:
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the sidestreets, but instead concentrate most of their attention on the path ahead, relying on their legal ‘right of way’. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
As above noted, the impact between the two vehicles occurred close to the center of the intersection, thus indicating both motorists entered the intersection almost simultaneously. Mrs. Smith, however, entered the intersection slightly ahead of Miss Hoye, as evidenced by the fact that the Smith car was struck on its left side by the front of the Hoye vehicle. It follows, therefore, there was no preemption of the street by Miss Hoye, and she should have yielded the use of the intersection to Mrs. Smith who had the superior right-of-way. It is our ruling Mrs. Smith was free of negligence constituting a proximate cause of the accident, and we so hold.
Plaintiffs ask for revision of the awards by the trial court, and its failure to assess damages in favor of Mrs. Smith. Catherine Smith and Mrs. Jane Hamner Smith both complained of personal injuries received and Robert McNair Smith sought accrued medical expenses of $927.71, and $1,500 additional for estimated future medical expenses of his daughter and wife.
Undoubtedly, the injuries of Catherine Smith were of a minor nature. Within a few hours after the accident Mrs. Smith visited Dr. R. T. Lucas, informed him that Catherine had been in an automobile collision, and requested that he examine her. Dr. Lucas was the family doctor and had attended Catherine from babyhood. Catherine complained of soreness in the right shoulder, right neck and right hand. The doctor found a slight bruise of the lateral aspect of the hand with a little tenderness over the fifth metacarpal. He found nothing that would not completely heal within a few days, and advised Mrs. Smith to that effect. Catherine next saw Dr. Lucas in November for treatment for a respiratory ailment, and then for the first time she told him of having struck her knees on the dashboard during the accident, whereupon the physician advised Mrs. Smith to have Catherine’s knees examined by Dr. Ray E. King, an orthopedist. Dr. King made this examination on November 10, 1958, at which time Catherine’s *655 mother told him the child had experienced swelling of the left knee which was accompanied with difficulty in going up and down steps. Catherine reported she had bumped ffier knees against the dashboard in the accident of April 15th. Following the examination the doctor reported a minimum amount of fluid in the left knee and made a diagnosis of non-specific synovitis or inflammation of the left knee. We are certain Catherine sustained a few mild bruises which, however, were of such a superficial nature an award of $100 is adequate.
We have carefully examined the lay and medical evidence tendered to show the extent and nature of the injuries sustained by Mrs. Smith in the collision, and it is our understanding that as of August 1, 1958, there was no residual of the trauma occasioned by the accident. The only medical expert to testify was Dr. Ray E. King, who related his observations and findings of examinations made from April 17, 1958, to April 8, 1959. The doctor testified that on the first examination Mrs. Smith stated she was shaken' up in the accident of April 15th, following which she had developed mild headaches and discomfort in the back of the neck, made worse when she moved her head from side to side. She reported she received a bump on the left knee and a contusion of the left arm. His findings on that occasion were recorded as a small contused or bruised area over the left knee and minimal tenderness in the back of the neck and over the seventh cervical and first thoracic vertebrae. He found no evidence of a whiplash injury or any injury to the disc. His prognosis was some discomfort for several days. Mrs. Smith returned for examination on April 25, May 12, June 10, June 16 and August 1, 1958, and still other examinations were made in each of the other months until April 8, 1959. On June 16th Mrs. Smith entered a hospital to receive treatment for a condition entirely unrelated to the accident and underwent surgery on July 16th. When she returned to Dr. King on August 1st, she had discontinued tranquilizers and sedatives which he had previously prescribed, and the doctor found her in good condition. Despite Dr. King’s negative findings Mrs. Smith continued to visit the doctor until April 8, 1959. In his testimony Dr. King expressed the opinion that because of Mrs. Smith’s subjective complaints, pain related to the accident might be felt in the region of the neck and shoulders.
Causal relationship between Mrs. Smith’s complaints after August 1st are not proven to our satisfaction. Expenses for treatment after said date must, therefore, be denied. Mrs. Smith is, however, entitled to a nominal award, which we fix at $250.
As a result of our evaluation of the evidence the award for medical expenses for the treatment of Mrs. Smith should include only those incurred prior to August 1, 1958.
The award of the trial court in favor of Robert McNair Smith will, therefore, be reduced from $1,160 to the sum of $732, comprising the following expenses:
Service of Dr. R. E. King-$248.00
Physical Therapy Treatments by Lucy Mell Platt-212.00
Massages by Mrs. Ruth Goudeau— 35.00
Medicine - 19.13
Repairs to automobile-218.37
The award made to Robert McNair Smith as administrator for Catherine Smith is increased from the sum of. $40 to the sum of $100. The judgment insofar as it rejects the demands of June Hamner Smith is reversed and set aside, and it is now ordered there be judgment in her favor and against the defendants, Mary Ruth Hoye and St. Paul Fire and Marine Insurance Company in solido, in the sum of $250, with legal interest from judicial demand. As so amended, the judgment is affirmed in all other respects. Mary Ruth Hoye and St. Paul Fire and Marine Insurance Company are assessed with all costs of this suit, including costs of the appeal.